**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ZACHARY BAUMEL, by his next friend, | ) | |
| STUART DITCHEK, JONAH BAUMEL, | ) | |
| MIRIAM BAUMEL, OSNA BAUMEL and | ) | |
| SHIMON BAUMEL , | ) | Civil Action No. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | **COMPLAINT FOR COMPEN-** |
| v. | ) | **SATORY AND PUNITIVE DAMAGES** |
| | ) | **PURSUANT TO THE FOREIGN** |
| SYRIAN ARAB REPUBLIC, BASHAR | ) | **SOVEREIGN IMMUNITIES ACT** |
| AL-ASSAD, JOHN DOE # 1, AS | ) | |
| REPRESENTATIVE OF THE ESTATE OF | ) | |
| HAFEZ AL-ASSAD, RIFAAT ASSAD, | ) | |
| FAROUQ AL-SHAARA, IMAD | ) | |
| MOUSTAPHA, MOUSTAPHA TLAAS, | ) | |
| POPULAR FRONT FOR THE | ) | |
| LIBERATION OF PALESTINE, ACHMED | ) | |
| JIBRIL | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN & JANE DOES 2-99, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs ZACHARY BAUMEL, by his next friend, STUART DITCHEK, JONAH

BAUMEL, MIRIAM BAUMEL, OSNA BAUMEL and SHIMON BAUMEL, by and through

counsel, bring this action seeking damages arising out of the kidnapping and twenty-three year

captivity of ZACHARY BAUMEL in Lebanon and Syria.  Plaintiffs seek judgment against

Defendants SYRIAN ARAB REPUBLIC, BASHAR AL-ASSAD, ESTATE OF HAFEZ ASSAD,

RIFAAT ASSAD, FAROUQ AL-SHAARA, IMAD MOUSTAPHA, MOUSTAPHA TLAAS,

PALISTINIAN FRONT FOR THE LIBERATION OF PALESTINE, ACHMED JIBRIL and JOHN

& JANE DOES 2-99, jointly and severally, and in support of their Complaint allege as follows:

# I.

## JURISDICTION AND VENUE

1.      Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a) and 1331.  Defendant SYRIAN ARAB REPUBLIC ("SYRIA") is subject to suit in the Courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7), and related statutes.  Defendants BASHAR AL-ASSAD, President of the SYRIAN ARAB REPUBLIC, JOHN DOE #1, AS REPRESENTATIVE OF THE ESTATE OF HAFEZ AL-ASSAD, RIFAAT ASSAD, FAROUQ AL-SHAARA, IMAD MOUSTAPHA, MOUSTAPHA TLAAS, POPULAR FRONT FOR THE LIBERATION OF PALESTINE, ACHMED JIBRIL and JOHN & JANE DOES 2-99, are subject to suit in the Courts of the United States pursuant to 28 U.S.C. § 1605(a)(7), and related statutes.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

# II

## THE PARTIES

3.      Plaintiff ZACHARY BAUMEL ("ZAK") is currently held by defendants at an unknown location in SYRIA or Lebanon.  Prior to his imprisonment, he was a resident of the State New York.  ZAK relocated to Israel in 1970.  ZAK is, and at the time of the incidents alleged in this Complaint was, a U.S. Citizen.  ZAK and his family are victims of "torture" as defined in § 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note), pursuant to 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1).  ZAK is, and was, a victim of "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages, pursuant to 28 U.S.C. §§ 1605 (a)(7) and 1605(e)(1).  He has suffered and continues to suffer "personal injury" as the result of

Defendants=wrongful actions and activities as defined in 28 U.S.C. §§ 1605(a)(7).

4.    Plaintiffs JONAH BAUMEL and MIRIAM BAUMEL, husband and wife, are residents and domiciliaries of the State of Israel, are U.S. Citizens, and are the parents of ZAK.

5.    Plaintiffs OSNA BAUMEL and SHIMON BAUMEL are residents and domiciliaries of the State of Israel, are U.S. Citizens, and are the siblings of ZAK.

6.    Plaintiff STUART DITCHEK is a U.S. Citizen and a resident of Kings County, New York. Dr. DITCHEK is the next friend of ZAK, having known him and been his close friend from their early childhood. Dr. DITCHEK attended school with ZAK until he emigrated to Israel in 1970. Dr. DITCHEK maintained contact and friendship with ZAK until ZAK's capture, and with ZAK's family to this day.

7.    Dr. DITCHEK has engaged in prolonged efforts, with the support and consent of ZAK=s family, on ZAK's behalf, has engaged in contacts with governments and representatives of the parties responsible for the holding of ZAK, and has set up and maintained a website devoted to securing freedom and an accounting for ZAK.

8.    Because of the capture and continued captivity of ZAK, which form the basis of this action, Dr. DITCHEK brings this action on behalf of ZAK, as his next friend, for relief under the Foreign Sovereign Immunities Act.

9.    Defendant SYRIA is a foreign state that, since 1979, has been designated by the U.S. government as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 24050) and § 620A of the Foreign Assistant Act of 1961 (22 U.S.C. § 2371). SYRIA provides material support and resources to defendant the POPULAR FRONT FOR THE LIBERATION OF PALESTINE and other organizations designated as terrorist organizations

within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, by providing them with funding, direction and training for terrorist activities in the Middle East.

10.    Defendant BASHAR AL-ASSAD ("ASSAD") is the President of SYRIA and he, as well as his predecessor, HAFEZ AL-ASSAD (ASSAD's father and the former President of SYRIA), performed acts within the scope of his office by assisting, coordinating and directing acts of terrorism, including the actions relating to ZAK=s kidnapping, holding as a hostage and continued captivity.  ASSAD has acted as an agent of SYRIA, performed acts within the scope of his agency, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note.  Defendant ASSAD and his predecessor have been personally responsible for the acts and omissions of all of the defendants herein.

11.    Defendant FAROUQ AL-SHAARA was the Foreign Minister of SYRIA and performed acts within the scope of his office by assisting, coordinating and directing acts of terrorism, including the actions relating to ZAK=s kidnapping, holding as a hostage and captivity. FAROUQ AL-SHAARA acted as an agent of SYRIA, performed acts within the scope of his agency, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note.

12.    Defendant IMAD MOUSTAPHA is the present Foreign Minister of SYRIA and performed acts within the scope of his office by assisting, coordinating and directing acts of terrorism, including the actions relating to ZAK=s kidnapping, holding as a hostage and captivity. IMAD MOUSTAPHA acted as an agent of SYRIA, performed acts within the scope of his agency, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note.

13.    Defendant MOUSTAPHA TLAAS is the former Defense Minister of SYRIA and performed acts within the scope of his office by assisting, coordinating and directing acts of

terrorism, including the actions relating to ZAK=s kidnapping, holding as a hostage and captivity.

MOUSTAPHA TLAAS acted as an agent of SYRIA, performed acts within the scope of his agency,

within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note.

14.    At all relevant times until his death on June 10, 2000, defendant HAFEZ AL-

ASSAD ("HAFEZ") was the President of SYRIA.

15.    Defendant AJOHN DOE #1@is the personal representative of the Estate of

HAFEZ.  The name AJOHN DOE #1@is fictitious, the person intended being the actual person

appointed or qualified under the law of his domicile to administer the goods, wares, choses in action

and the property of HAFEZ.

16.    Defendant RIFAAT ASSAD ("RIFAAT") is the brother of HAFEZ, is a

former high-ranking member of the Syrian military and performed acts within the scope of his office

by assisting, coordinating and directing acts of terrorism, including the actions relating to ZAK=s

kidnapping, holding as a hostage and captivity.  RIFAAT acted as an agent of SYRIA, performed

acts within the scope of his agency, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. §

1605 note.

17.    On information and belief, defendant the POPULAR FRONT FOR

LIBERATION OF PALESTINE ("POPULAR FRONT") is an unincorporated association, or

another entity the form and nature of which are unknown, that operates in Syria, Lebanon, and the

territories controlled by the Palestinian Authority that has been designated by the U.S. government

as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50

U.S.C. App. § 24050) and § 620A of the Foreign Assistant Act of 1961 (22 U.S.C. § 2371).

18.    Defendant ACHMED JIBRIL is, on information and belief, a resident of

Lebanon and the leader of the POPULAR FRONT.

19.     Defendants JOHN DOES 2-99 are other officials, employees, and agents of SYRIA or others of the defendants, including the POPULAR FRONT, whose identities are presently unknown, who performed acts that resulted in acts of terrorism, including the actions relating to ZAK=s kidnapping, holding as a hostage, torture and captivity.  Defendants JOHN DOES 2-99, acting as agents of SYRIA and all the other defendants, performed acts within the scope of their agencies, within the meaning of 28 U.S.C. § 1605 (a)(7) and 28 U.S.C. § 1605 note.

## III

### **FACTS**

20.     On June 11, 1982, while serving in the Israeli Defense Forces Armored Corps in Southern Lebanon, ZAK was captured by a unit of the Syrian Army or a Palestinian Group loyal to SYRIA.

21.     ZAK was taken to Damascus as a hostage by the Syrian Army, where he was displayed as a trophy of war, along with his tank and other persons captured with him, in a >Victory parade.= ZAK and his fellow captives were subjected to shame and humiliation, their tank on a flatbed truck driven through the streets, all in violation of law.

22.     Although appearing at the time to be reasonably healthy given the circumstances, and notwithstanding repeated attempts to secure information from defendants who have completely denied access to him, ZAK has not been seen by representatives of Israel, the United States Red Cross or his family since.

23.     Neither the Governments of the United States or Israel nor news agencies nor the International Committee for the Red Cross ("ICRC") have been given access to ZAK.

24.     Thereafter, defendants claimed that ZAK had died and they had buried his body with those of other captured Israeli soldiers in the Jewish cemetery in Damascus.

25.     Thereafter, with the permission of SYRIA, the ICRC assisted in the exhumation of four bodies, which SYRIA claimed were the bodies of the missing Israeli soldiers, from the Damascus Jewish cemetery.

26.     Forensic analysis of the bodies so exhumed indicated that only one was the body of an Israeli soldier, one Zohar Lipschitz.  The other bodies were of Arabs.

27.     When confronted with this deception, HAFEZ and his representatives remarked that they had returned "the bodies of dogs."

28.     HAFEZ, during his tenure as President and until his death, personally, directly and in his capacity as President of SYRIA, formulated the policies and directed the actions which resulted in the holding of ZAK.

29.     The actions of HAFEZ were beyond the norms of civilized society and human decency.

30.     As such, HAFEZ, through his Estate, can make no claim to immunity and his Estate, by his personal representative, is responsible for all the damages caused by HAFEZ's actions.

31.     Upon information and belief, the tank and the prisoners were taken to Damascus and were stationed in front of the military offices of defendant RIFAAT, who appeared to be directing the Syrian troops on that occasion and encouraging the taunting and mistreatment of the prisoners.

32.     As a result of his incarceration, ZAK has been wrongfully held for 8,706 days as of the date of this Complaint.

33.     Upon information and belief, ZAK has been: immobilized; blindfolded; held in various and different places for months; transported from location to location; shackled; left in a constant state of disorientation and fear for his life; kept in solitary confinement; confined in cramped, airless rooms, permitted little or no exercise; given only minimal and infrequent access to toilet facilities; fed an unbalanced, monotonous and inadequate diet; physically abused; beaten with fists, guns and sticks; and subjected to verbal abuse, taunts and humiliation, all by defendants.

34.     In addition, upon information and belief, ZAK has been threatened with death by his captors, denied proper medical attention and medication, denied contact with the outside world, including his family, friends and colleagues, and forced to endure severe physical discomfort, injury, mental anguish, depression, humiliation, anxiety, and pain and suffering.

35.     Upon information and belief, while so held, ZAK has been deprived of educational and employment opportunities and advancement, and has been unable to provide financially for his family during his captivity.

36.     Upon information and belief, in addition, ZAK has been deprived of the opportunity to socialize, meet and engage in social contact with people of his age for the purpose social interchange and prospects of marriage and concerning the creation and raising of his own family.

37.     ZAK's captors and those who continue to hold him are and were agents, (a) of the Government of SYRIA, and (b) of all of the defendants who each acted with respect to his captivity and imprisonment and contributed thereto.

38.     In addition, ZAK has been held at times by the POPULAR FRONT, which, upon information and belief, inflicted on ZAK harms similar to those described in ¶ 33. ACHMED

JIBRIL, individually and in his capacity as leader of the POPULAR FRONT, directed the POPULAR FRONT's infliction of those harms on ZAK.

39.     At all relevant times, SYRIA, POPULAR FRONT, ASSAD, HAFEZ, FAROUQ AL-SHAARA, IMAD MOUSTAPHA, MOUSTAPHA TLASS, ACHMED JIBRIL and JOHN DOES 1-99 provided materials, resources and support in the form of funding, training and direction to ZAK's captors.

40.     All of the named defendants were acting within the scope of their agencies, offices and employment.


## COUNT I

## **BATTERY**

41.     Plaintiffs repeat paragraphs 1 through 40.

42.     On July 11, 1982, SYRIA and/or Palestinians under Syrian control, willfully, violently and forcefully seized and abducted ZAK at gunpoint and against his will in Southern Lebanon.

43.     Upon information and belief, since that date, ZAK has been beaten with fists, guns, sticks and other objects by agents of SYRIA, the POPULAR FRONT, and the named Defendants.

44.     Upon information and belief, as a result of his forceful abduction and of beatings with fists, guns, sticks and other objects, which took place during his captivity, ZAK has suffered severe and permanent injuries.

45.     Upon information and belief, thereafter and at various times during his prolonged captivity, ZAK has been held by defendant the POPULAR FRONT and ACHMED

JIBRIL, its leader, or other Palestinian groups under the control of SYRIA, and subjected to the severe conditions set forth herein throughout the term of his captivity.

46.    Upon information and belief, as a direct and proximate result of these acts, ZAK has been severely injured.

## COUNT II

## ASSAULT

47.    Plaintiffs repeat paragraphs 1 through 46.

48.    Upon information and belief, SYRIA, the POPULAR FRONT and the named defendants, individually or through their agents, subjected ZAK to constant threats to harm or kill him, together with incidents of actual physical abuse.

49.    Upon information and belief, during the time ZAK has been held in captivity by defendants, SYRIA, the POPULAR FRONT and the named defendants, individually or through their agents, put ZAK in unreasonable fear and apprehension of harm as a direct result of defendants' constant threats to harm or kill him, together with incidents of actual physical abuse.

50.    As a direct and proximate result of the willful, wrongful and intentional acts of defendants, ZAK has been injured in that he endured extreme mental anguish, physical injury and pain and suffering.

51.    Upon information and belief, such extreme injury will continue for the balance of his life after his release and will shorten his life.

## COUNT III

## FALSE IMPRISONMENT

52.     Plaintiffs repeat paragraphs 1 through 51.

53.     For a period of 8,706 days, or precisely twenty-three years, ten months and one day, to the date of this Complaint, and continuing until his release, ZAK has been, and continues to be, held in captivity against his will by defendants.

54.     Upon information and belief, during ZAK's captivity, ZAK has been deprived of his freedom and liberty and has had no means of escape.

55.     Upon information and belief, as a direct and proximate result of the willful, wrongful, intentional and reckless acts of defendants, ZAK has been injured in that he has endured extreme mental anguish and pain and suffering, has been deprived of employment, loss of opportunities for advancement, the company of his family, and has been subjected to intense physical injury, discomfort and inconvenience.

## COUNT IV

## ECONOMIC DAMAGES

56.     Plaintiffs repeat paragraphs 1 through 55.

57.     As a direct and proximate result of the willful, wrongful, intentional and reckless acts of defendants, ZAK incurred economic damages in that he was deprived of education, employment and opportunities of advancement while held hostage and deprived of future employment opportunities after his release.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58.    Plaintiffs repeat paragraphs 1 through 57.

59.    The acts of abducting ZAK and holding him captive and as a hostage constitute extreme and outrageous conduct by defendants beyond any norms of civil society.

60.    As a direct and proximate result of the willful, wrongful, intentional and reckless acts of defendants, plaintiffs have been caused to suffer severe emotional distress.

## COUNT VI

### LOSS OF SOLATIUM

61.    Plaintiffs repeat paragraphs 1 through 60.

62.    As a direct and proximate result of the willful, wrongful, intentional and reckless acts of defendants, Plaintiffs have suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of ZAK while he has been held in captivity and to the date of his release.

63.    As a direct and proximate result of the willful, wrongful, intentional and reckless acts of defendants, ZAK has suffered extreme mental anguish, emotional pain and suffering and the loss of society, companionship of other members of his family and next friend, including the Plaintiffs.

## COUNT VII

### PUNITIVE DAMAGES

64.    Plaintiffs repeat paragraphs 1 through 63.

65.    The actions of SYRIA and the POPULAR FRONT, who jointly and severally

kidnapped ZAK and have held him hostage for over of twenty-three years, were intentional and malicious and were in willful, wanton and reckless disregard of ZAK's rights.

66.    Each of the named defendants was acting within the scope of his with SYRIA or the POPULAR FRONT.

67.    Pursuant to § 589 of the 1997 Omnibus Consolidated Appropriations Act, P.L. 104-209, Div. A., Title 1 § 101(c) (September 30, 1996), 110 Stat. 3009-172 reprinted at 28 U.S.C. ' 1605 note, which specifically authorizes a cause of action for punitive damages in civil actions for money damages resulting from terrorist acts, all of the defendants are liable for punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant judgment in their favor and against defendants on Counts I through Count VII, and grant plaintiffs:

A.    Compensatory damages against all defendants, jointly and severally, in the following amounts:

1.    $ 100,000,000.00 on the First Count;

2.    $ 100,000,000.00 on the Second Count;

3.    $ 180,000,000.00 on the Third Count;

4.    $ 100,000,000.00 on the Fourth Count;

5.    $ 25,000,000.00 on The Fifth Count, for each of Plaintiffs

STUART DITCHEK, JONAH BAUMEL, MIRIAM BAUMEL,

OSNA BAUMEL and SHIMON BAUMEL.

      6. $ 25,000,000.00 on the Sixth Count.

      B.      Punitive damages against all defendants on the Seventh Count in an

appropriate amount to be determined at Trial;

      C.      Reasonable costs and expenses;

      D.      Reasonable attorneys=fees; and

      E.      Such other and further relief as the Court may determine to be just and

equitable under the circumstances.

April 12, 2006

                PEARCE & LUZ LLP
                Attorneys for Plaintiffs

                By: _____
                Thomas J. Luz (DC Bar no. 415762)

                1500 Broadway, 21st Floor
                New York, New York 10036
                (212) 221-8733