# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZACHARY BAUMEL, by his next friend, STUART DITCHEK, JONAH BAUMEL, MIRIAM BAUMEL, OSNA BAUMEL and SHIMON BAUMEL,<br><br>Plaintiffs,<br><br>-against-<br><br>SYRIAN ARAB REPUBLIC, BASHAR AL-ASSAD, JOHN DOE # 1, AS REPRESENTATIVE OF THE ESTATE OF HAFEZ AL-ASSAD, RIFAAT ASSAD, FAROUQ AL-SHAARA, IMAD MOUSTAPHA, MOUSTAPHA TLAAS, POPULAR FRONT FOR THE LIBERATION OF PALESTINE, ACHMED JIBRIL<br><br>And<br><br>JOHN & JANE DOES 2-99,<br><br>Defendants. | Civil Action No. 06-682 (RMC) |

## SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR THE COURT TO DIRECT SERVICE PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT

Plaintiffs, by their attorneys, Karaahmetoglu & Luz Firm, LLP, submit this memorandum in further support of Plaintiffs' motion for an order permitting Plaintiffs to serve the summons and complaint in this action, pursuant to 28 U.S.C. § 1608(b)(3)(C), on Defendants Bashar Al-Assad, Rifaat Assad, Farouq Al-Shaara, Moustapha Tlaas, Imad Moustapha, John Doe #1, as representative of the estate of Hafez Al-Assad, the Popular Front for the Liberation of Palestine and Achmed Jibril, as agents

of Syria, by delivering them to the Embassy of Syria in the District of Columbia by licensed process server, or by such other means as the Court may direct.

In the alternative, Plaintiffs request a declaration that any or all of the Defendants be treated as the foreign state of Syria and therefore subject to service by the Secretary of State of the United States pursuant to 28 U.S.C. § 1608(a).

**Preliminary Statement**

Plaintiffs are filing this memorandum pursuant to the Court's order of April 11, 2008, directing Plaintiffs to file a supplemental brief concerning the adequacy of service on certain Defendants.

The purpose of this memorandum is to assist the Court in determining the correct method of service on the defendants. The Foreign Sovereign Immunities Act, under which this action is brought, provides for different methods of service depending on whether the defendant being served is considered an "agency or instrumentality" of the foreign state, or, by virtue of his core functions on behalf of the state, indistinguishable from the state itself.

In this case, all of the Defendants except two, the Popular Front for the Liberation of Palestine ("Popular Front") and its leader, Achmed Jibril, are current or former high-ranking officials in the Syrian government or military. Although the law is not entirely clear, it appears that the Court would be justified in finding that these governmental Defendants are in fact part of, and inseparable from, the Syrian government. Should the Court so determine, then service on the governmental defendants will be effected pursuant to § 1608(a). As for Jibril and the Popular Front,

they are not officially part of the Syrian government, but appear to act under its direction with the government's logistical and financial support. It would appear that they are agencies and instrumentalities of the state rather than a part of the state.

Plaintiffs wish to serve each Defendant properly under the FSIA, according to this Court's determination of his status. Therefore, Plaintiffs will abide by this Court's determination of that status and serve Defendants accordingly.

## FACTS

The facts are fully set forth in Plaintiffs' Motion for the Court to Direct Service Pursuant to the Foreign Sovereign Immunities Act, filed on December 19, 2007. Additional facts are set forth in the accompanying affidavit of Stuart Ditchek ("Ditchek Aff."), sworn to on April 24, 2008.

## ARGUMENT

### Point I

### DEFENDANTS ARE SUBJECT TO JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

The Foreign Sovereign Immunities Act ("FSIA") confers immunity upon foreign states for activities conducted within the scope of their governmental duties and provides the sole basis for obtaining jurisdiction over a foreign state in a United States court. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439, 109 S. Ct. 683, 690 (1989); *Nikbin v. Islamic Republic of Iran*, 471 F.Supp.2d 53, 58 (D.D.C.

2007); *Ledgerwood v. State of Iran*, 617 F.Supp. 311, 313 (D.D.C. 1985); *see also* 28 U.S.C. § 1602.

However, foreign states are not immune from the jurisdiction of U.S. courts insofar as the foreign state's activities are beyond the scope of its official public duties or when the activities fall within one of the FSIA's enumerated exceptions. *Nikbin*, 471 F.Supp.2d at 59. Under the FSIA, subject matter jurisdiction plus service of process establishes personal jurisdiction so that the Court may proceed to consider the merits of a claim against a foreign state. *Nikbin*, *supra* (citing *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 (D.C. Cir. 1987)); *Stern v. Iranian Ministry of Information and Security*, 271 F.Supp.2d 286, 298 (D.D.C. 2003).

One such exception to immunity is § 1605(a)(7), which states that "an official, employee, or agent of a foreign state designated as a state sponsor of terrorism… while acting within the scope of his or her office, employment, or agency shall be liable to a United States national for personal injury or death caused by acts[1] of that official, employee or agent… " *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1029 (D.C. Cir. 2004); *Bodoff v. Islamic Republic of Iran*, 424 F.Supp.2d 74, 82 (D.D.C. 2006); 28 U.S.C. § 1605(a)(7). Congress has enacted the "Flatow Amendment," which gives U.S. citizens a private right of action to assert claims against those officials who perform and/or support terrorist acts within the ambit of the statute. *Cicippio-Puleo*, 424 F.Supp.2d at 1029; *Nikbin*, 471 F.Supp.2d at 60; 28 U.S.C. § 1605 note.

Former officials are also subject to jurisdiction under § 1605(a)(7). *Nikbin*, 471 F.Supp.2d at 61 (the Court had jurisdiction over former Iranian President, Akbar

---

[1] Under § 1605(a)(7), personal injury must "be caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking or the provision of material support or resources (as defined in section 2339A of title 18) for such an act…" 28 U.S.C. § 1605.

4

Hashemi Rafsanjani, and former head of the Ministry of Intelligence and Security, Ali Akbar Fallahian Khuzestani, for their "sufficiently heinous" acts which took place during and within the scope of their leadership and constituted torture under § 1605(a)(7)); *see Eisenfeld v. The Islamic Republic of Iran*, 172 F.Supp.2d 1, 6 (D.D.C. 2000); *Stern*, *supra*.

The requirements of § 1605(a)(7) have been satisfied in this action. Syria is a foreign state that has been designated by the U.S. government as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. app. § 24050) and § 620A of the Foreign Assistant Act of 1961 (22 U.S.C. § 2371). Zachary Baumel is a U.S. citizen and a victim of "hostage taking" by Defendants as defined in §§ 1605(a)(7) and 1605(e).[2] He has suffered and continues to suffer personal injury as a result of the Defendants' wrongful actions and activities. Syria's support of terrorism could not have occurred without the Individual Defendants' senior leadership and acts, which fall squarely within the ambit of the statute. As a result, the Individual Defendants are not immune from the jurisdiction of this Court.

More specifically, Defendant Bashar Al-Assad (and before him Mr. Assad's father, Hafez Al-Assad) is the President of Syria. Ditchek Aff. ¶ 8. As head of state, he has assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's being held as a hostage and

---

[2] Under § 1605(a)(7), the term "hostage taking" has the meaning as defined by Article 1 of the International Convention Against the Taking of Hostages. 28 U.S.C. § 1605(e). That Convention defines "hostage taking" as "[a]ny person who seizes or detains and threatens to kill, to injure or to continue to detain another person (hereinafter referred to as the "hostage") in order to compel a third party, namely, a State, an international intergovernmental organization, a natural or juridical person, or a group of persons, to do or abstain from doing any act as an explicit or implicit condition for the release of the hostage..." International Convention Against the Taking of Hostages, art. 1, Dec. 18, 1979, 18 I.L.M. 1456, 1457, U.N. GAOR, Supp. No. 39, U.N. Doc. A/34/39.

continued captivity. *Id*. Mr. Al-Assad is personally liable for the acts and omissions of all the Individual Defendants in this cause of action. Therefore, Mr. Al-Assad's acts, conducted within the scope of his duties, fall within the meaning of § 1605(a)(7).

Defendant Farouq Al-Shaara was the Foreign Minister of Syria under Hafez Al-Assad. *Id*. at ¶ 9. He assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity. *Id*. Therefore, Al-Shaara's acts, conducted within the scope of his duties, fall within the meaning of § 1605(a)(7).

Defendant Imad Moustapha is the present Foreign Minister of Syria. *Id*. at ¶ 10. He has assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity. *Id*. Therefore, Moustapha's acts, conducted within the scope of his duties, fall within the meaning of § 1605(a)(7).

Defendant Moustapha Tlaas is the former Defense Minister of Syria. *Id*. at ¶ 11. He assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity. *Id*. Therefore, Tlaas's acts, conducted within the scope of his duties, fall within the meaning of § 1605(a)(7).

Defendant John Doe #1 is the personal representative of the estate of Hafez Al-Assad. Hafez Al-Assad was the former President of Syria and was the father of Bashar Al-Assad. *Id*. at ¶ 12. He assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity. *Id*. Hafez Al-Assad was

personally liable for the acts and omissions of all the Individual Defendants in this cause of action.  Therefore, Hafez Al-Assad's acts, conducted within the scope of his duties, fall within the meaning of § 1605(a)(7).

Defendant Rifaat Al-Assad is a former high-ranking member of the Syrian military and the brother of Hafez Al-Assad.  *Id*. at ¶ 13.  He held the rank of General in the military and was head of the special militia group known as the "Pink Panthers."  *Id*.  He assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity.  *Id*.  Therefore, Assad's acts, conducted within the scope of his duties, fall within the meaning of § 1605(a)(7).

Defendant Achmed Jibril is the leader of Defendant the Popular Front for the Liberation of Palestine – General Command (the "Popular Front"), an unincorporated association based in Syria.  *Id*. at ¶ 14, Ex. 1-4.  The United States Department of State has determined that the Popular Front is a terrorist organization in accordance with § 219 of the Immigration and Nationality Act.  *Id*.  The Popular Front is funded directly or indirectly by the government of Syria and operates out of Syrian territory.  *Id*.  Mr. Jibril and the Popular Front act at the direction of, and in coordination with, Syria.

Accordingly, the Defendants are subject to jurisdiction under the FSIA.

**Point II**

**COURT-ORDERED SERVICE UPON THE EMBASSY OF SYRIA
IN THE DISTRICT OF COLUMBIA BY A LICENSED PROCESS SERVER
IS APPROPRIATE BECAUSE THE INDIVIDUAL DEFENDANTS ARE
AGENCIES OR INSTRUMENTALITIES PURSUANT TO § 1608(b)(3)(C)**

Service on a foreign state must be made pursuant to § 1608. *Bodoff*, 424 F.Supp.2d at 83. Section 1608(a) enumerates the methods that must be used to serve a "foreign state" while § 1608(b) deals specifically with service upon a foreign state's "agencies and instrumentalities." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994); 28 U.S.C. § 1608.

Section 1608(a)(4) sets forth the last resort method of service on a "foreign state" when it cannot otherwise be made:

> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Section 1608(b)(3)(C) sets forth the last resort method of service on foreign "agencies and instrumentalities" when it cannot otherwise be made:

> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> (C) as directed by order of the court consistent with the law of the place where service is to be made.

However, § 1608 does not further define "foreign states" or "agencies or instrumentalities" for the purpose of categorizing foreign entity's for service of process.*

Courts of this jurisdiction have adopted the "core functions" test in determining whether a foreign entity is considered a "foreign state" or "agency or instrumentality" of a foreign state. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003); *Transaero, Inc.*, *supra*. The threshold inquiry is whether the foreign entity's functions are primarily governmental or commercial. *Transaero, Inc.*, *supra.* The Court may consider whether the entity's core functions are so closely bound up with the structure of the state that it cannot be considered a "separate legal person, corporate or otherwise." *Id*. In such instances, the entity should be treated as a foreign state for purposes of service of process under § 1608. *Id*. at 153. This Court has further held that the core functions test may be applied when determining the status of individual defendants who are officers of foreign states. *Nikbin*, 471 F.Supp.2d at 65.

The Defendants are agencies or instrumentalities of Syria. It cannot be disputed that all of the defendants either hold office in the Syrian government or act at its direction. Although a strong case can be made that Hafez Al-Assad, Bashar Al-Assad, Moustapha, Tlass, and Al-Sharra should more properly be considered part of Syria itself, the law leaves room for a finding that, to the extent they exceeded the scope of their core duties in their actions toward Zachary Baumel, they are agencies and instrumentalities of Syria. As for Jibril and the Popular Front, it is equally clear that they are not part of the Syrian government and must be served under § 1608(b). Since service cannot be made

---

* Section 1603, which incorporates political subdivisions, agencies and instrumentalities under the definition of "foreign state," is not applicable for the purpose of determining service pursuant to § 1608.

9

pursuant to any other provision under § 1608(b), it must be made in accordance with an order issued by this Court pursuant § 1608(b)(3)(C).

**Point III**

**IF THE COURT DETERMINES THAT THE INDIVIDUAL DEFENDANTS ARE NOT AGENCIES OR INSTRUMENTALITIES OF SYRIA, IT SHOULD RULE THAT THEY ARE SUBJECT TO SERVICE THROUGH THE DEPARTMENT OF STATE**

If the Court finds that any of the Individual Defendants are not agencies or instrumentalities within the meaning of § 1608(b), Plaintiffs request that the Court order that those Individual Defendants be treated as the foreign state of Syria and, therefore, subject to service through the Department of State.

This Court has held that presidents of foreign states are "states" for the purpose of determining service pursuant to § 1608. *Nikbin*, 471 F.Supp.2d at 67 (finding that "the former president of the state of Iran plainly must be treated as the foreign state itself for purposes of service of process."). It naturally follows that this Court may find that Defendants Bashar Al-Assad, Syria's current president, and Hafez Al-Assad, Syria's former president, also constitute "states" for the purpose of service under the FSIA. Should the Court find that either Bashar Al-Assad or Hafez Al-Assad is not an agency or instrumentality pursuant to § 1608(b), Plaintiffs request that the Court order that Defendant served through the Department of State of the United States

This Court has also held that an officer of an entity that is considered the foreign state itself under the core functions test should be treated as the state itself for the purpose of determining service of process. *Id*. at 67. In *Nikbin*, the Court reasoned that the immunity afforded to foreign officers is a "natural outgrowth" of the immunity

provided to foreign states since "actions against officers are the practical equivalent of suits against the state itself." *Id*. at 66.  The Court went on to apply this principle to § 1608 and concluded that since the Iranian Ministry of Intelligence and Security was the "state" under the core functions test, the former head of the Ministry should also be considered the "state" and served accordingly.  *Id*.; *Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 107 (D.D.C. 2007).

It is reasonable to infer that Defendants Imad Moustapha, Farouq Al-Shaara and Moustapha Tlaas, the current and former leaders of the Syrian Foreign and Defense Ministries, should be served as the state pursuant to § 1608(a).  Should the Court find that any of them are not agencies or instrumentalities pursuant to § 1608(b), Plaintiffs request that the Court order that those Defendants be served through the Department of State of the United States.

Similarly, this Court has held that the armed forces of a foreign sovereign are "foreign states" for the purpose of determining service of process.  *Transaero, Inc*., 30 F.3d at 153 ("... it is hard to see what would count as the 'foreign state' if its armed forces do not."); *Roeder*, 333 F.3d at 234.  It would not, therefore, be inconsistent with the authority of this jurisdiction if this Court finds that Defendant Rifaat Assad, a former high-ranking military official, should be served as a foreign state pursuant to § 1608(a).  In that case, Plaintiffs request that the Court order that Rifaat Assad be served through the Department of State of the United States.

Furthermore, this Court may find that Defendants the Popular Front and Achmed Jibril's functions are more governmental than commercial for the purpose of

service of process. In that case, Plaintiffs request that the Court order that those Defendants be served through the Department of State of the United States.

## Conclusion

Individual Defendants Bashar Al-Asaad, John Doe #1, as representative of the estate of Hafez Al-Assad, Rifaat Assad, Farouq Al-Shaara, Imad Moustapha, Moustapha Tlaas, the Popular Front and Achmed Jibril, are subject to jurisdiction pursuant to § 1605(a)(7) of the FSIA. Syria is a designated state sponsor of terrorism and the Individual Defendants, as Syrian leaders, committed acts constituting "hostage taking" within the meaning of the statute upon a U.S. citizen. Further, the Individual Defendants' core functions provide a basis for the Court to issue an order pursuant to § 1608(b)(3)(C) permitting Plaintiffs to serve the Defendants as agencies and instrumentalities of Syria by delivering the summons and complaint to the Embassy of Syria in the District of Columbia by licensed process server, or by such other means as the Court may direct. However, should the Court find that any of the Individual Defendants are not agencies or instrumentalities, Plaintiffs respectfully request that the Court order that those Individual Defendants be served through the Department of State of the United States.

April 24, 2008

        KARAAHMETOGLU & LUZ FIRM, LLP
        *Attorney for Plaintiffs*
        Zachary Baumel, *et al.*


        By: _____/s/_____
            Thomas J. Luz, Esq.
        1500 Broadway, 21st Floor
        New York, NY 100036
        (212) 681-8313