UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ZACHARY BAUMEL, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-682 (RMC) |
| SYRIAN ARAB REPUBLIC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

Zachary Baumel, by his next friends, Stuart Ditchek, Jonah Baumel, Miriam Baumel, Osna Baumel, and Shimon Baumel (collectively, "Plaintiffs") filed a complaint in this matter on April 14, 2006. The complaint alleges that Zachary Baumel, a United States citizen, is currently being held by Defendants at an unknown location in Syria or Lebanon as a victim of "hostage taking" as defined in Section 3 of the Torture Victims Protection Act of 1991. Compl. ¶ 3; 28 U.S.C. §§ 1605(a)(7)[1] and 1605(e)(1) (2006). Plaintiffs are seeking, *inter alia*, compensatory and punitive damages against all Defendants. The named Defendants consist of the Syrian Arab Republic, the Popular Front for the Liberation of Palestine, and the following individuals: Syrian President Bashar Al-Assad; Syrian Foreign Minister Imad Moustapha; former Syrian Foreign Minister Farouq Al-Shaara; former Syrian Defense Minister Moustapha Tlaas; "former high-ranking member of the Syrian Military," Rifaat Assad; John Doe # 1, as Representative of the Estate of Hafez Al-Assad; and

---

[1] Since the filing of the complaint, 28 U.S.C. § 1605(a)(7) was replaced by 28 U.S.C. § 1605A. *See* Defense Authorization Act for Fiscal Year 2008 ("Defense Authorization Act"), Section 1083, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-344 (2008).

Achmed Jibril, leader of the Popular Front for the Liberation of Palestine.[2]

Before the Court is Plaintiffs' Motion for the Court to Direct Service Pursuant to the Foreign Sovereign Immunities Act ("Pls.' Mem."). *See* Dkt. # 8. Plaintiffs request an order pursuant to 28 U.S.C. § 1608(b)(3)(C) permitting them to serve a summons and the complaint in this action on certain Defendants[3] by delivering them to the Embassy of Syria in the District of Columbia by licensed process server, or by such other means as the Court may direct.

On April 11, 2008, the Court issued an Order directing Plaintiffs to file a supplemental brief to address certain questions and concerns of the Court. Plaintiffs filed a Supplemental Memorandum in Further Support of Motion for the Court to Direct Service Pursuant to the Foreign Sovereign Immunities Act ("Pls.' Supp. Mem."), *see* Dkt. # 12, on April 24, 2008, along with the Affidavit of Stuart Ditchek in Further Support of the Motion for the Court to Direct Service Pursuant to the Foreign Sovereign Immunities Act ("Ditchek Aff."), *see* Dkt. # 13.

## I. BACKGROUND

The Foreign Sovereign Immunities Act ("FSIA") "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). 28 U.S.C. § 1608 sets forth the requirements for sufficient service under the FSIA. 28 U.S.C. § 1608(a) provides the service requirements for a "foreign state or political subdivision of a foreign state." Service upon an agency or instrumentality of a foreign state is governed by 28 U.S.C. § 1608(b).

---

[2] Names and titles of the individual Defendants appear as listed in Plaintiffs' complaint.

[3] The Court notes that Plaintiffs are in the process of attempting service on the Syrian Arab Republic under 28 U.S.C. § 1608(a) (governing service on a "foreign state or political subdivision of a foreign state"). *See* Dkt. # 9.

On August 8, 2006, Defendants Bashar Al-Assad, John Doe #1 (as Representative of The Estate of Hafez Al-Assad), Rifaat Assad, Farouq Al-Shaara, and Moustapha Tlaas were each sent the summons and complaint via registered mail, return receipt requested, pursuant to 28 U.S.C. § 1608(b)(3)(B).  *See* Pls.' Mem. ¶ 2.  On August 10, 2006, Defendant Imad Moustapha was served with the summons and complaint via certified mail, return receipt requested, pursuant to 28 U.S.C. § 1608(b)(3)(B).  *Id*. ¶ 3.  Return receipts were never returned to Plaintiffs.  *Id*. ¶ 4.  Plaintiffs "have yet to receive responses from any Defendants and cannot confirm Defendants' receipt of the summons and complaint."  *Id*. ¶ 11.

Plaintiffs propose serving the summons and complaint in this action on the individual Defendant "agencies and instrumentalities" under § 1608(b)(3)(C) by delivering them to the Embassy of Syria in the District of Columbia by licensed process server.  In the alternative, Plaintiffs request a declaration that any or all of the Defendants be treated as the foreign state of Syria and are therefore subject to service by the Secretary of State of the United States pursuant to 28 U.S.C. § 1608(a).  *See* Pls.' Supp. Mem. at 2.

## II. LEGAL STANDARDS

Questions of whether service should be accomplished through § 1608(a), for a foreign state or political subdivision, or § 1608(b), for an agency or instrumentality, are decided by a "core functions" test.  *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 149-50 (D.C. Cir. 1994)).  "[I]f the core functions of the entity are governmental, it is considered the state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  *Roeder*, 333 F.3d at 234.  The distinction is an important one.  "[S]ection 1608(a) 'sets forth the exclusive procedures for service on a foreign state,

but contains no such admonition for section 1608(b). Section 1608(b)(3) allows simply delivery 'if reasonably calculated to give actual notice,' showing that Congress was there concerned with substance rather than form; but the analogous subsection of section 1608(a) says nothing about actual notice." *Transaero*, 30 F.3d at 154 (citing H.R. Rep. No. 1487 (1976), at 24, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6223); *id*. ("The authorities generally hold that section 1608(b) may be satisfied by technically faulty service that gives adequate notice to the foreign state. . . . [However], strict adherence to the terms of 1608(a) is required.").

### III. ANALYSIS

This district court has held that an officer of a foreign state may be treated as the state itself, under the core functions test. *See Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 67 (D.D.C. 2007). In *Nikbin*, the court reasoned that the immunity afforded to foreign officers is a "natural outgrowth" of the immunity provided to foreign states since "actions against officers are the practical equivalent of suits against the state itself." *Id*. at 66; *see also Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1034 (D.C. Cir. 2004) ("As the Supreme Court repeatedly has explained, an official-capacity claim against a government official is in substance a claim against the government itself."). The holdings in *Nikbin* and *Cicippio-Puleo* inform this Court's decision here.[4]

---

[4] In arguing that the Defendants should be considered agencies or instrumentalities, Plaintiffs state, without support, that "the law leaves room for a finding that, to the extent they exceeded the scope of their core duties in their actions towards Zachary Baumel, they are agencies and instrumentalities of Syria." Pls.' Supp. Mem. at 9. However, the core functions test for determining the proper method of service simply requires the Court to determine if the core functions of the entity are governmental or commercial. *See Roeder*, 333 F.3d at 234. Because Defendants Bashar Al-Assad, John Doe # 1, Farouq Al-Shaara, Imad Moustapha, Moustapha Tlaas, and Rifaat Assad all hold or held posts that are more governmental than commercial in nature, the Court considers them to be the "state" for purposes of service. *See infra*.

### A. Defendants Bashar Al-Assad and John Doe # 1

Defendant Bashar Al-Assad (and before him, Mr. Assad's father, Hafez Al-Assad[5]) is the President of Syria. According to Plaintiffs, "[a]s head of state, [they] assisted, coordinated and directed acts of terrorism within the scope of [their] office, including the actions relating to Zachary Baumel's being held as a hostage and continued captivity." Pls.' Supp. Mem. at 5-6. "Mr. Al-Assad is personally liable for the acts and omissions of all of the Individual Defendants in this cause of action." *Id*.

This district court has held that presidents of foreign states are "states" for the purpose of determining service pursuant to § 1608. *See Nikbin*, 471 F. Supp. 2d at 67 (finding that "the former president of the state of Iran plainly must be treated as the foreign state itself for the purposes of service of process."). This Court will follow suit and treat Mr. Bashar Al-Assad, as well as John Doe # 1, the personal representative of the estate of Hafez Al-Assad, as the "state" for service here. *Id*.; *see also id*. at 61 (holding that the court had jurisdiction over former Iranian President, Akbar Hashemi Rafsanjani, and former head of the Ministry of Intelligence and Security, Ali Akbar Fallahian Khuzestani, for their "sufficiently heinous" acts which took place during and within the scope of their leadership).

### B. Defendants Farouq Al-Shaara, Imad Moustapha, and Moustapha Tlaas

Defendant Farouq Al-Shaara was the Foreign Minister of Syria under Hafez Al-Assad. *See* Ditchek Aff. ¶ 19. Defendant Imad Moustapha is the present Foreign Minister of Syria. *Id*. ¶ 10. Defendant Moustapha Tlaas is the former Defense Minister of Syria. *Id*. ¶ 11. According to Plaintiffs, each of these Defendants "assisted, coordinated and directed acts of terrorism within the

---

[5] John Doe # 1, named as a Defendant, is the representative of Hafez Al-Assad's estate.

scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity." *See* Pls.' Supp. Mem. at 6.

In keeping with *Nikbin*, this Court will consider Mr. Al-Shaara, Mr. Moustapha, and Mr. Tlaas to be the "state" for purposes of service. *See Nikbin*, 471 F. Supp. 2d at 66 (holding that the Iranian Ministry of Intelligence and Security was the "state" under the core functions test, as well as the former head of the Ministry). There is no indication that the roles held by any of these three Defendants are more commercial than governmental in nature.

### C. Defendant Rifaat Assad

Defendant Rifaat Al-Assad is a former high-ranking member of the Syrian military and the brother of Hafez Al-Assad. Pls.' Supp. Mem. at 7. "He held the rank of General in the military and was head of the special militia group known as the 'Pink Panthers.' He assisted, coordinated and directed acts of terrorism within the scope of his office, including the actions relating to Zachary Baumel's kidnapping, being held as a hostage and continued captivity." *Id*.

Courts in this District have held that the armed forces of a foreign sovereign are "foreign states" for the purpose of determining service of process. *See Transaero, Inc.*, 30 F.3d at 153 (" . . . it is hard to see what would count as the 'foreign state' if its armed forces do not."); *Roeder*, 333 F.3d at 234. Members of the armed forces of foreign sovereigns have also been considered the "state" for service. *See Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261, 274-75 (D.D.C. 2003) (Revolutionary Guards must be treated as the foreign state itself for service). Accordingly, and because his role is not "commercial" in nature, the Court concludes that Mr. Al-Assad should be treated as the "state" and shall be served pursuant to § 1608(a).

### D. Defendants Popular Front and Achmed Jibril

In their Motion, Plaintiffs explicitly state that the Popular Front for the Liberation of Palestine and Achmed Jibril, leader of the Popular Front, are not considered the foreign state, or the agency or instrumentality of a foreign state. *See* Pls.' Mem. at 2 ("On April 14, 2006, Plaintiffs filed a summons and complaint in this Court against Defendants, all of whom (with the exception of the Popular Front for the Liberation of Palestine and Achmed Jibril) are a foreign state, agency or instrumentality of a foreign state."). Accordingly, Plaintiffs did not include the Popular Front of Mr. Jibril in their request for permission to serve by alternative means.

Plaintiffs now argue in their Supplemental Memorandum that these two Defendants "are agencies and instrumentalities of the state" and that they "appear to act under its direction with the government's logistical and financial support." *See* Pls.' Supp. Mem. at 3. "The United States Department of State has determined that the Popular Front is a terrorist organization in accordance with § 219 of the Immigration and Nationality Act. The Popular Front is funded directly or indirectly by the government of Syria and operates out of Syrian territory. Mr. Jibril and the Popular Front act at the direction of, and in coordination with, Syria." *Id.* at 7; Ditchek Aff. ¶ 14, Exs. 1-4.

Plaintiffs do not explain why the core functions of these two Defendants are more commercial than governmental in nature. *See Roeder*, 333 F.3d at 234. Nor did Plaintiffs include these Defendants in their initial motion for alternative service. Further, Plaintiffs did not argue that these two Defendants should be treated as the "state" itself. The Court will make no decision in this Memorandum Opinion with regard to service on these Defendants.

### IV. CONCLUSION

The Court will grant Plaintiffs' alternative request in their Supplemental

Memorandum in Further Support of Motion for the Court to Direct Service Pursuant to the Foreign Sovereign Immunities Act [Dkt. ## 8 & 12]. Defendants Bashar Al-Assad, John Doe # 1, as Representative of the Estate of Hafez Al-Assad, Farouq Al-Shaara, Moustapha Tlass, Imad Moustapha, and Rifaat Asaad shall be served pursuant to 28 U.S.C. § 1608(a) (governing service on a "foreign state or political subdivision of a foreign state"). A memorializing order accompanies this Memorandum Opinion.


Date: May 8, 2008                                      /s/
                                            ROSEMARY M. COLLYER
                                            United States District Judge