**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ZACHARY BAUMEL,** *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-682 (RMC) |
| **SYRIAN ARAB REPUBLIC,** *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This is an action brought on behalf of Zachary Baumel against the Syrian Arab Republic and the Popular Front for the Liberation of Palestine and certain of their officials for alleged hostage-taking and torture.[1] Syria moves to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose. For the reasons explained herein, the motion will be granted under Rule 12(b)(6), and the case dismissed against all Defendants.

**I. FACTS**

The facts are taken from Plaintiffs' Amended Complaint [Dkt. # 50] and are assumed to be true. Mr. Baumel, a United States citizen, was a resident of the State of New York who

---

[1] Individual Defendants include Syrian President Bashar Al-Assad; Syrian Foreign Minister Imad Moustapha; former Syrian Foreign Minister Farouq Al-Shaara; former Syrian Defense Minister Moustapha Tlaas; "former high-ranking member of the Syrian Military," Rifaat Assad; John Doe # 1, as Representative of the Estate of Hafez Al-Assad; and Achmed Jibril, leader of the Popular Front for the Liberation of Palestine. Since filing this case on April 14, 2006, Plaintiffs have been attempting to serve the Popular Front for the Liberation of Palestine and the individual Defendants. On June 18, 2009, Plaintiffs filed a mandamus suit against the Secretary of State to compel service of process on the individual Syrian Defendants. *See Baumel v. United States*, Civil Action No. 09-1126 (D.D.C. June 18, 2009).

relocated to Israel in 1970 and later joined the Israeli Defense Forces Armored Corps. On June 11, 1982, Mr. Baumel was captured by the Syrian Army or a Palestinian group loyal to Syria while serving in the Israeli Defense Forces Armored Corps in Southern Lebanon during war between Israel and Syria.[2]  Thereafter, Mr. Baumel was taken to Damascus as a hostage of the Syrian Army, where he was displayed as a trophy of war, along with his tank and the other Israeli soldiers captured with him, in a victory parade.  Mr. Baumel has not been seen by representatives of Israel, the United States Red Cross, or his family since.  Nor has the United States, Israel, news agencies, or the International Committee for the Red Cross been given access to him.

Thereafter, Defendants claimed that Mr. Baumel had died and that they had buried his body with those of other captured Israeli soldiers in the Jewish cemetery in Damascus.  With Syria's permission, the International Committee for the Red Cross assisted in the exhumation of four bodies that Syria claimed were bodies of the missing Israeli soldiers.  Forensic analysis of the bodies indicated that only one was the body of an Israeli soldier, but not Mr. Baumel.  The others were Arabs.

Upon Plaintiffs' "information and belief"

1. Mr. Baumel, his fellow Israeli soldiers, and their tank were taken to Damascus and were stationed in front of Syria's military offices.  Thereafter, Mr. Baumel was incarcerated.

2. Mr. Baumel has been "immobilized; blindfolded; held in various and

---

[2] The Court notes that at the time of Mr. Baumel's alleged capture by Syria in Lebanon, a state of war existed between Israel and Syria, and Lebanon was at the front of that war. *See, e.g.,* U.S. Department of State, http://www.state.gov/r/pa/ei/bgn/3580.htm ("Following the 1982 Israeli invasion of Lebanon, Syrian and Israeli forces clashed in eastern Lebanon.").

        different places for months; transported from location to location; shackled; left in a constant state of disorientation and fear for his life; kept in solitary confinement; confined in cramped, airless rooms, permitted little or no exercise; given only minimal and infrequent access to toilet facilities; fed an unbalanced, monotonous and inadequate diet; physically abused; beaten with fists, guns and sticks; and subjected to verbal abuse, taunts and humiliation." Am. Compl. ¶ 33.

3.   Mr. Baumel has been "threatened with death by his captors, denied proper medical attention and medication, denied contact with the outside world, including his family, friends and colleagues, and forced to endure severe physical discomfort, injury, mental anguish, depression, humiliation, anxiety, and pain and suffering." *Id.* ¶ 34.

4.   Mr. Baumel has been "deprived of educational and employment opportunities and advancement, and has been unable to provide financially for his family during his captivity." *Id.* ¶ 35.

5.   Mr. Baumel has been "deprived of the opportunity to socialize, meet and engage in social contact with people of his age for the purpose [of] social interchange and prospects of marriage and concerning the creation and raising of his own family." *Id.* ¶ 36.

Plaintiffs, Mr. Baumel's parents, siblings, and his next friend, sue all Defendants for battery (Count I), assault (Count II), false imprisonment (Count III), economic damages (Count IV), intentional infliction of emotional distress (Count V), loss of solatium (Count VI), and punitive

damages (Count VII). The Syrian Arab Republic, the only Defendant served, moves to dismiss.

## II.  LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial

plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### III. ANALYSIS

Plaintiffs filed this lawsuit on April 14, 2006, under 28 U.S.C. § 1605(a)(7), an exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*., that waives the sovereign immunity of a designated foreign state in actions in which money damages are sought for personal injury or death caused by one of the specified acts of terrorism. *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004). "Section 1605(a)(7) is merely a jurisdiction conferring provision that does not otherwise provide a cause of action against either a foreign state or its agents." *Id.* Under this statutory scheme, a plaintiff could bring suit against a foreign state and a federal court would have jurisdiction under § 1605(a)(7) — but the substance of the claims against the foreign state would be derived from the law of the relevant U.S. state under § 1606. Section 1606 provides: "[T]he foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency

or instrumentality thereof shall not be liable for punitive damages." 28 U.S.C. § 1606. Section 1606 functioned as a "pass through," and in this way foreign states could be liable via § 1606 under another specific source of law, such as state law. *See, e.g., Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 840 (D.C. Cir. 2009) (citing *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009)); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 265-66 (D.D.C. 2006); *Dammarell v. Islamic Republic of Iran*, Civ. No. 01-2224, 2005 WL 756090, at *1 (D.D.C. Mar. 29, 2005). Despite the applicability of other sources of law, § 1606 provided that foreign states were expressly exempt from liability for punitive damages. *Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, 541 F. Supp. 2d 46, 53 (D.D.C. 2008).

The Flatow Amendment, 28 U.S.C. § 1605 note, provides a cause of action against "an official, employee, or agent of a foreign state designated as a state sponsor of terrorism" "for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7)." 28 U.S.C. § 1605 note. Thus, "Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it," and the Flatow Amendment provides a federal private right of action against officials, employees, and agents of a foreign state, but not against the foreign state itself. *Cicippio-Puleo*, 353 F.3d at 1033.

On January 28, 2008, Congress enacted the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), Pub. L. No. 110-181, 122 Stat. 3 (2008). Section 1083 of the NDAA revised the state-sponsored terrorism exception to sovereign immunity by repealing § 1605(a)(7) and adding a new exception codified at § 1605A. *See* NDAA § 1083. Section 1605A is more

advantageous to plaintiffs in several respects — most notably, it creates a federal cause of action against foreign states for which solatium and punitive damages may be awarded. *See* 28 U.S.C. § 1605A ("A foreign state that is or was a state sponsor of terrorism . . . shall be liable . . . for money damages. . . . [D]amages may include economic damages, solatium, pain and suffering, and punitive damages.").

"[A] plaintiff in a case pending under § 1605(a)(7) may not maintain that action based upon the jurisdiction conferred by § 1605A; in order to claim the benefits of § 1605A, the plaintiff must file a new action under that new provision." *Simon v. Republic of Iraq*, 529 F.3d 1187, 1192 (D.C. Cir. 2008), *reversed on other grounds sub nom. Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009). However, notwithstanding NDAA § 1083, "courts retain jurisdiction pursuant to § 1605(a)(7) over cases that were pending under that section when the Congress enacted the NDAA." *Id.*

### A. Plaintiffs' Cause of Action Against Syria Under § 1605A is Time-Barred

On July 14, 2009, Plaintiffs filed a motion for leave to amend their Complaint under Federal Rule of Civil Procedure 15 to bring a cause of action against Syria under § 1605A. Because Rule 15 "guarantee[s] a plaintiff an absolute right to amend its complaint once at any time before the defendant has filed a responsive pleading," *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000), and because Syria had not filed a responsive pleading, the Court granted Plaintiffs' motion on July 22, 2009.³

---

³ Plaintiffs did not need leave of Court to amend their Complaint because "[a] party may amend its pleading once as a matter of course before being served with a responsive pleading." Fed. R. Civ. P. 15(a)(1)(A).

Syria moves to dismiss the cause of action against it under § 1605A, arguing that it is time-barred. "Plaintiffs with 'pending cases' may invoke new § 1605A in certain circumstances." *Simon*, 529 F.3d at 1192. "Pursuant to § 1083(c)(2) ('Prior Actions'), a plaintiff who detrimentally 'relied upon' former § 1605(a)(7) of the FSIA 'as creating a cause of action' and whose action was 'pending before the courts in any form' when the NDAA became law was given 60 days within which to 'refile' his suit based upon the new cause of action created by § 1605A(c)." *Id.* Section 1083(c)(2) provides that "[a] motion may be made or an action may be refiled under subparagraph (A) *only* within the 60-day period beginning on the date of the enactment of this Act [Jan. 28, 2008]." NDAA § 1083(c)(2)(C)(ii) (emphasis added). Therefore, Plaintiffs had only 60 days from January 28, 2008 — that is, until March 28, 2008 — to either refile under § 1605A or file a motion requesting that their pending action under § 1605(a)(7) be given effect as if the action had originally been filed under § 1605A. *See In re Islamic Republic of Iran Terrorism Litig.*, Civil Action No. 01-2094, 2009 WL 3112136, at *26 (D.D.C. Sept. 30, 2009) ("Plaintiffs [with cases pending under § 1605(a)(7) at the time the NDAA was enacted] who hope to gain the benefits of the new law by filing a motion or by refiling pursuant to § 1083(c)(2), must file their motions [or refile] 'within the 60-day period beginning on the date of the enactment of the [NDAA],' or no later than March 28, 2008."). Because Plaintiffs did not seek leave to amend their Complaint to bring a cause of action against Syria under § 1605A until July 14, 2009, more than a year too late, that cause of action is time-barred. *See Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985) ("a motion to dismiss [for failure to state a claim] may be granted on the basis that the action is time-barred only when it appears from the face of the complaint that the relevant statute of limitations bars the action").

Plaintiffs argue that they "were permitted to amend their complaint as a matter of course under Rule 15 of the Federal Rules of Civil Procedure" and that they "merely amended their complaint to add a new cause of action under 28 U.S.C. § 1605A, not to retroactively invoke its benefits." Pls.' Mem. in Opp'n to Syria's Mot. to Dismiss ("Pls.' Opp'n") [Dkt. # 54] at 9. Plaintiffs' arguments miss the mark. Under Rule 15, "an amendment adding a new ground for relief to the complaint must contend with the applicable statute of limitations." *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009).[4] The issue is not whether Plaintiffs had a right under Rule 15 to amend their Complaint to add a new cause of action against Syria under § 1605A, but whether the cause of action under § 1605A must be dismissed for failure to state a claim under Rule 12(b)(6) because it is time-barred. "The 60-day time limit in § 1083(c)(2) is what Congress directed, and counsel has not provided this Court with any case precedent or other authority to suggest that this Court may override or waive the time limit for filing imposed by Congress under the circumstances here." *In re Islamic Republic of Iran Terrorism Litig.*, 2009 WL 3112136, at *52. Nor is the Court persuaded by Plaintiffs' argument that the amendment was timely because it does not seek retroactive application of § 1605A. The 60-day time limit in § 1083(c)(2) applies to all plaintiffs who had cases pending under § 1605(a)(7) at the time the NDAA was enacted and who seek prospective application of § 1605A, as is made clear by § 1083(c)(2)'s use of the future tense "be given effect." *See* NDAA § 1083(c)(2)(A) (upon timely motion or refiling, actions pending under

---

[4] "In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to 'relate back' to the timely-filed claims the plaintiff alleged in the original complaint." *Jones*, 557 F.3d at 674. Plaintiffs do not argue that the amendment was timely because it relates back to their original Complaint under Rule 15(c). Nor would that argument, had Plaintiffs made it, save the amendment in these circumstances where Congress specifically provided a 60-day time limit within which amendments to add a cause of action under § 1605A must have been made. Were it otherwise, the 60-day time limit in NDAA § 1083(c)(2) would be rendered meaningless.

§ 1605(a)(7) shall "*be given effect* as if the action had originally been filed under section 1605A(c) of title 28, United States Code") (emphasis added).[5]

Finally, Plaintiffs argue that "[i]t is indisputable that, if Plaintiffs had no pending cause of action and filed a new lawsuit alleging violations of § 1605A, they would have standing and the claim would proceed." Pls.' Opp'n at 10-11. This assertion seems doubtful.[6] But, assuming it to be correct, Plaintiffs *did* have a pending cause of action against Syria under § 1605(a)(7) at the time § 1605A was enacted, and NDAA § 1083(c)(2) provided plaintiffs with such a pending action "only a limited window of opportunity to elect the benefits of the new statute." *In re Islamic Republic of Iran Terrorism Litig.*, 2009 WL 3112136, at *26. Plaintiffs failed to take advantage of the new statute within the allotted time frame.

### B. Plaintiffs' Cause of Action Under § 1605(a)(7) and the Flatow Amendment Fails Against All Defendants

"Congress had two clear goals behind the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act: (1) deterring terrorism, and (2) accomplishing such deterrence by stripping the states that sponsor terrorism of their foreign sovereign immunity and forcing them

---

[5] Plaintiffs' reliance on *Clay v. Socialist People's Libyan Arab Jamahirya*, Civil Action No. 06-707, 2008 WL 591008 (D.D.C. Mar. 3, 2008), and *Harris v. Socialist People's Libyan Arab Jamahirya*, Civil Action No. 06-732, 2008 WL 591009 (D.D.C. Mar. 3, 2008), is misplaced. Both of those cases concerned a plaintiff's motion for leave to amend its complaint under Rule 15, not a defendant's motion to dismiss the complaint under Rule 12, like here. Further, the orders in those cases are dated March 3, 2008, prior to the March 28, 2008 expiration of the 60-day period referenced in NDAA § 1083(c)(2).

[6] A plaintiff who did not commence a related action under § 1605(a)(7) may bring a new action under § 1605A "if the action is commenced . . . not later than the latter of (1) 10 years after April 24, 1996; or (2) 10 years after the date on which the cause of action arose." 28 U.S.C. § 1605A(b). Insofar as Plaintiffs' cause of action arose on June 11, 1982, when Mr. Baumel is alleged to have been captured, Plaintiffs' cause of action under § 1605A would still be time-barred even if they had not previously commenced an action under § 1605(a)(7).

to compensate the victims of the terrorist acts they sponsor." *Peterson v. Islamic Republic of Iran*, Civil Action No. 01-2094, slip op. at 5 (D.D.C. Dec.18, 2002). "As the goal of Congress was to deter international terrorism by compensating its victims, it is necessary to determine whether the act that caused the injury to a plaintiff was, in fact, an act of terrorism." *Id.* "Congress has defined terrorism as follows: 'premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents.'" *Id.* (quoting 22 U.S.C. § 2656f(d)(2)). "Congress's definition of 'terrorism' makes it clear that a violent act that caused injury to a service member in a combat situation would not qualify as terrorism, and such injury, therefore, would not constitute grounds for recovery under the state-sponsored terrorism exception to the FSIA." *Id.*; *see also Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 258 (D.D.C. 2006) ("In *Peterson*, this Court held that a service member and his or her family may recover under the state-sponsored terrorism exception to the FSIA only if the service member was a non-combatant not engaged in military hostilities.").

"On June 11, 1982, while serving in the Israeli Defense Forces Armored Corps in Southern Lebanon," Mr. Baumel "was captured by a unit of the Syrian Army or a Palestinian Group loyal to Syria" and "was taken to Damascus as a hostage by the Syrian Army, where he was displayed as a trophy of war, along with his tank and other persons captured with him, in a Victory parade." Am. Compl. ¶¶ 20 & 21. Assuming these factual assertions to be true, as it must, the Court finds that Mr. Baumel was captured as an Israeli combatant while engaged in military hostilities against Syria. Accordingly, the Court concludes that Mr. Baumel's capture was not an act of "terrorism" within the meaning of the state-sponsored terrorism exception to the FSIA, and, for that reason, Plaintiffs' cause of action under § 1605(a)(7) and the Flatow Amendment fails to state a

claim against all Defendants.

Plaintiffs resist this conclusion. They argue that "Mr. Baumel's status as a 'combatant' in the Israeli Defense Forces necessarily changed to that of a 'non-combatant' when hostilities ended and Syria failed to release him." Pls.' Opp'n at 12. "At that point," Plaintiffs argue, "Mr. Baumel's status as a U.S. citizen permitted him to bring this action regardless of his past military service." *Id.* They note that "[t]he United Nations Secretary-General concluded that as of June 16, 2000, Israel had withdrawn its forces from Southern Lebanon in accordance with United Nations Security Council Resolution 425 of 1978, thereby bringing an official conclusion to the war" and that "the United States Department of State also considers Israel's occupation of Southern Lebanon to have ended in May 2000." *Id.* at 12-13. Because "[i]t is a clearly established principle of the law of war that detention may last no longer than active hostilities," *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004), they argue that "once Syria failed in its obligation to return Mr. Baumel [in 2000], he became a hostage and Syria became liable for hostage-taking under the FSIA." *Id.* at 13-14. In support of their conversion theory, Plaintiffs note that "[i]n addition to creating a private right of action against foreign states, [in the NDAA] Congress also amended the terrorist exception of the FSIA to explicitly allow members of the U.S. armed forces to file suit against foreign states for acts of torture and hostage taking." *Id.* at 12. They extrapolate that "[i]n light of this recent amendment, there is no doubt that Congress intended that the FSIA apply to all members of the U.S. armed forces, including soldiers on the front lines who were injured by acts of terror perpetrated by a foreign state or that state's officals." *Id.*

While it is true that § 1605A expands the scope of the state-sponsored terrorism exception to the FSIA to include terrorist acts perpetrated against "a member of the armed forces,"

-12-

it does not change the definition of "terrorism" as being a "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents." 22 U.S.C. § 2656f(d)(2).  The Court is not convinced that it is an act of "terrorism" for a designated foreign state to fail to release a combatant captured on the battlefield upon cessation of military hostilities.  It may be a violation of the law of war to fail to release, at the war's end, combatants captured as prisoners of war, but Plaintiffs have not persuaded the Court that such a failure also is a terrorist act for which a designated foreign state may be held liable under the state-sponsored terrorism exception to the FSIA.  In any event, the expansion does not appear to benefit Plaintiffs inasmuch as their cause of action under § 1605A is time-barred, Mr. Baumel was not a member of the U.S. armed forces, to whom the expansion applies,[7] and the need for the amendment suggests that Congress was concerned that § 1605(a)(7), which does apply here, could be interpreted to exclude members of the U.S. armed forces even when not engaged in military hostilities.

Ultimately, however, the Court need not decide that issue because Plaintiffs have alleged no facts that, as of June 16, 2000, when the war between Israel and Syria ended and Mr. Baumel ceased to be a combatant under Plaintiffs' conversion theory, Mr. Baumel was alive, kept hostage by Syria, and tortured.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Id.* (quotation marks and

---

[7] "The term 'armed forces' means the Army, Navy, Air Force, Marine Corps, and Coast Guard."  10 U.S.C. § 101(a)(4).  *See* 28 U.S.C. § 1605A(h)(4) ("the term 'armed forces' has the meaning given that term in section 101 of title 10").

citation omitted).

According to Plaintiffs' own averments, Mr. Baumel "has not been seen by representatives of Israel, the United States Red Cross or his family since" June 11, 1982. Am. Compl. ¶ 22. Each of Plaintiffs' allegations concerning Syria's treatment of Mr. Baumel since that date is based upon only Plaintiffs' "information and belief," *see id.* ¶¶ 33-36, and is rank speculation. Plaintiffs conjecture that "Mr. Baumel continues to be held in squalid conditions, beaten, abused and denied rudimentary necessities, such as clean air to breathe, access to toilet facilities, a balanced diet or access to medical care," Pls.' Opp'n at 14, but they provide no basis to believe that is fact. Indeed, their only basis for believing that Mr. Baumel is still alive is that none of the bodies Syria thought were the bodies of the missing Israeli soldiers was Mr. Baumel's. Under these circumstances, "the well-pleaded facts," *i.e.*, that Mr. Baumel disappeared on June 11, 1982 in Lebanon while serving in the Israeli army and that his body was never found, "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1950. "Because the plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombley*, 550 U.S. at 570.

## IV.  CONCLUSION

For the foregoing reasons, Syria's Motion to Dismiss the Amended Complaint for failure to state a claim against it [Dkt. # 53] will be granted, and this case will be dismissed against all Defendants. A memorializing Order accompanies this Memorandum Opinion.

Date: November 3, 2009                                  /s/
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge